**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **THE PARISH OF PLAQUEMINES,** | * | **CIVIL ACTION NO. 2:18-cv-05256** |
| | * | |
| **Plaintiff,** | * | |
| **versus** | * | **JUDGE JAY C. ZAINEY** |
| | * | |
| **TOTAL PETROCHEMICALS &** | * | |
| **REFINING USA, INC.,** | * | **MAGISTRATE JUDGE** |
| **et al.,** | * | **DONNA PHILLIPS CURRAULT** |
| | * | |
| **Defendants.** | * | |
| | * | |

* * * * * * * * * * * * * * * * * * *

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO VACATE REMAND ORDER**

**TABLE OF CONTENTS**

INTRODUCTION ..... 1

BACKGROUND ..... 3

LEGAL STANDARD ..... 9

ARGUMENT ..... 9

I. The Fifth Circuit Has Held That Defendants Timely Removed This Case ..... 10

II. The Fifth Circuit Has Held That Defendants "Act[ed] Under" Federal Officers In Fulfilling Government Contracts For Avgas During World War II ..... 11

III. The Supreme Court Has Held That Defendants' Challenged Production Of Crude Oil During WWII "Relat[es] To" Defendants' Federally Directed Production Of Avgas ..... 13

IV. As Every Federal Judge To Address The Issue Has Concluded, Defendants Also Satisfy The "Colorable Federal Defense" Requirement ..... 14

CONCLUSION ..... 19

## TABLE OF AUTHORITIES

**Cases**

*Baker v. Atl. Richfield Co.*,
962 F.3d 937 (7th Cir. 2020) .......... 9

*Bell v. Hood*,
327 U.S. 678 (1946) .......... 14

*Bordenkircher v. Hayes*,
434 U.S. 357 (1978) .......... 16

*Chevron USA Inc. v. Plaquemines Par.*,
608 U.S. 1 (2026) .......... *passim*

*City of Walker v. Louisiana ex rel. Dep't of Transp. & Dev.*,
877 F.3d 563 (5th Cir. 2017) .......... 9

*Colorado v. Symes*,
286 U.S. 510 (1932) .......... 9

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) .......... 16

*Hillman v. Maretta*,
569 U.S. 483 (2013) .......... 14

*Humphries v. Elliott Co.*,
760 F.3d 414 (5th Cir. 2014) .......... 9

*Jefferson Cnty. v. Acker*,
527 U.S. 423 (1999) .......... 9

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994) .......... 16

*Latiolais v. Huntington Ingalls, Inc.*,
951 F.3d 286 (5th Cir. 2020) .......... 5

*Mesa v. California*,
489 U.S. 121 (1989) .......... 14, 17

*New Orleans City v. Aspect Energy, LLC*,
126 F.4th 1047 (5th Cir. 2025) .......... 4, 15

*Par. of Cameron v. Alpine Expl. Co.*,
2026 WL 2428143 (W.D. La. Aug. 19, 2026) .......... *passim*

*Par. of Plaquemines v. Chevron USA, Inc.*,
7 F.4th 362 (5th Cir. 2021) ........ *passim*

*Par. of Plaquemines v. Northcoast Oil Co.*,
669 F.Supp.3d 584 (E.D. La. 2023) ........ *passim*

*Plaquemines Par. v. BP Am. Prod. Co.*,
103 F.4th 324 (5th Cir. 2024) ........ *passim*

*Plaquemines Par. v. BP Am. Prod. Co.*,
132 F.4th 739 (5th Cir. 2024) ........ 8

*Plaquemines Par. v. Chevron USA, Inc.*,
2022 WL 9914869 (5th Cir. Oct. 17, 2022) ........ 5, 6, 11

*Plaquemines Par. v. Riverwood Prod. Co.*,
2022 WL 101401 (E.D. La. Jan. 11, 2022) ........ *passim*

*United States v. Griffith*,
522 F.3d 607 (5th Cir. 2008) ........ 10, 13

*United States v. Lee*,
358 F.3d 315 (5th Cir. 2004) ........ 10

*Watson v. Philip Morris Cos.*,
551 U.S. 142 (2007) ........ 11, 18

*Zeringue v. Crane Co.*,
846 F.3d 785 (5th Cir. 2017) ........ 14

**Constitutional Provision**

U.S. Const. art. III, §2 ........ 14

**Statutes**

28 U.S.C. §1442(a) ........ 6, 9, 13

28 U.S.C. §1442(a)(1) ........ 2, 17

28 U.S.C. §1446(b) ........ 1

La. Rev. Stat. §49:214.21 *et seq.* ........ 4

La. Rev. Stat. §49:214.34(C)(2) ........ 15

**Regulations**

6 Fed. Reg. 5880 (Nov. 19, 1941) ........ 15

7 Fed. Reg. 5142 (July 7, 1942) .......... 14

8 Fed. Reg. 12,571 (Sept. 14, 1943) .......... 14

**Other Authorities**

Br. for U.S., *Chevron USA Inc. v. Plaquemines Par.*, 608 U.S. 1 (filed U.S. Sept. 11, 2025) .......... 12

La. Br., *Chevron USA Inc. v. Plaquemines Par.,* 608 U.S. 1 (filed U.S. Nov. 13, 2025) .......... 18

## INTRODUCTION

The Supreme Court's decision in this case—*Chevron USA Inc. v. Plaquemines Parish*, 608 U.S. 1 (2026)—makes clear that the case belongs in federal court. Back in April 2023, this Court ordered the case remanded to state court, on the ground that Defendants "satisf[y] neither the acting under requirement nor the related to requirement for federal officer removal." *Par. of Plaquemines v. Northcoast Oil Co.*, 669 F.Supp.3d 584, 596 (E.D. La. 2023).[1] Both conclusions have now been squarely rejected by the appellate courts. On appeal, the Fifth Circuit held that this Court "erred in holding that Defendants did not satisfy the 'acting under' element," but nevertheless affirmed on the "relating to" element. *Plaquemines Par. v. BP Am. Prod. Co.* (*Plaquemines IV*), 103 F.4th 324, 335 (5th Cir. 2024); *see id.* at 339-42. The Supreme Court granted certiorari. It did not disturb the Fifth Circuit's conclusion that the "acting under" requirement is satisfied, but rejected the Fifth Circuit's "relating to" analysis, unanimously holding that there is "a close relationship" between Defendants' challenged "production of crude oil" and their "wartime avgas refining" under federal contracts. *Chevron*, 608 U.S. at 12-13; *accord id.* at 16 (Jackson, J., concurring in the judgment). In light of the Supreme Court's guidance, this Court should vacate its earlier remand order and confirm that this suit should proceed in federal court.

Prior appellate decisions in this long-running litigation have left Plaintiffs without any plausible argument against removal. A private party seeking federal-officer removal must first establish that its notice of removal was timely. *See* 28 U.S.C. §1446(b). The removing party must then satisfy three substantive requirements: (1) it must be "a person 'acting under' a federal officer"; (2) "the suit must be 'for or relating to any act under color of such office'"; and (3) the

[1] This Court remanded this case "[f]or the same reasons given when the Court granted the motion to remand filed in" *Northcoast Oil*. Dkt.103. Accordingly, this brief refers to *Northcoast Oil* as the Court's decision in this case.

removing party "must assert 'a colorable federal defense.'" *Chevron*, 608 U.S. at 6 (citing 28 U.S.C. §1442(a)(1)).

Defendants have now prevailed on the timeliness issue and the first two substantive requirements for removal. The Fifth Circuit has held that Defendants' "removal based on federal-officer jurisdiction was timely" because it occurred less than 30 days after Plaintiffs served an expert report that "revealed a new theory of liability"—and grounds for federal-officer removal—in this case "for the first time." *Par. of Plaquemines v. Chevron USA, Inc.* (*Plaquemines I*), 7 F.4th 362, 365-67 (5th Cir. 2021). The Fifth Circuit has also held that Defendants "satisfy the 'acting under' requirement" because they "were federal contractors that refined a product—100-octane [avgas]—that the government needed to fight in World War II." *Plaquemines IV*, 103 F.4th at 335. And the Supreme Court has now held that Defendants' allegedly unlawful "wartime crude-oil production was closely connected to [their] wartime avgas refining." *Chevron*, 608 U.S. at 10.

The only remaining question is whether Defendants have raised a "colorable federal defense" to Plaintiffs' claims, and the answer is plainly yes. Although the panel majority in *Plaquemines IV* did not reach this issue, every federal judge to address it has found that element readily satisfied. Writing separately in *Plaquemines IV*, Judge Oldham concluded that Defendants have "clearly" raised at least one "colorable federal defense." 103 F.4th at 356 (Oldham, J., dissenting). And both district courts to consider the issue reached the same conclusion. *Par. of Cameron v. Alpine Expl. Co.*, 2026 WL 2428143, at *10-11 (W.D. La. Aug. 19, 2026); *Plaquemines Par. v. Riverwood Prod. Co.*, 2022 WL 101401, at *6-7 (E.D. La. Jan. 11, 2022). In fact, defendants have at least two colorable federal defenses. First, Plaintiffs claim that Louisiana law (during WWII) required Defendants to build "overland roads" to their oil-production facilities, instead of dredging canals, and to use "steel tanks," rather than earthen pits, at the heads of oil

wells. *Plaquemines IV*, 103 F.4th at 336. On that view of Louisiana law, it would have been impossible to comply with both federal law and state law—giving rise to a more-than-colorable preemption defense—because federal regulations severely restricted the use of asphalt and steel during WWII. *See id.* at 356 (Oldham, J., dissenting); *Alpine*, 2026 WL 2428143, at *10-11. Second, Plaintiffs' attempt to use a 1978 statute to penalize Defendants for lawful conduct during the 1940s raises serious due process concerns. *See Riverwood*, 2022 WL 101401, at *7. Accordingly, it is no surprise that every federal judge to reach the question has found the colorable-federal-defense requirement satisfied.

In short, in light of intervening precedents, including the Supreme Court's *Chevron* decision, Defendants have definitively established all requirements for federal-officer removal. This Court should vacate its remand order and direct the case to proceed in federal court.

## BACKGROUND

***Plaintiffs File Dozens of Substantively Identical Lawsuits.*** This is one of 42 closely related cases brought in state court by Louisiana parishes seeking to hold oil and gas companies—including Defendants—liable for exploration and production activities conducted in Louisiana's coastal zone since the 1930s. *See Northcoast Oil*, 669 F.Supp.3d at 586-87; *see also* Dkt.1 at 2. Each of these closely related lawsuits challenges Defendants' activities in a different "[o]perational [a]rea"—geographical boundaries invented by Plaintiffs for the sole purpose of the lawsuits. *See Plaquemines IV*, 103 F.4th at 329; *see also* Dkt.1-8 at 4-5. Yet even while Plaintiffs attempted to artificially divide Defendants' activities into separate operational areas for the purpose of bringing multiple lawsuits, Plaintiffs admitted that their prayer for relief in each case "extend[s] beyond case area boundaries." Dkt.1-3 at 22; *see also Alpine Expl. Co.*, 2026 WL 2428143, at *9 (observing that by drawing artificial operational areas but seeking region-wide recovery, "Plaintiffs try to have their cake and eat it [too]").

Plaintiffs allege that Defendants violated Louisiana's State and Local Coastal Resources Management Act ("SLCRMA"), La. Rev. Stat. §49:214.21 *et seq.*, by failing to get coastal use permits when needed or by violating the terms of permits they obtained. SLCRMA provides, however, that no permit is needed for "uses legally commenced or established prior to the [September 20, 1980] effective date of the coastal use permit program." *Id.* §49:214.34(C)(2); *see New Orleans City v. Aspect Energy, LLC*, 126 F.4th 1047, 1052 (5th Cir. 2025) (City "ha[d] no claim" against company that "acquired or constructed its pipeline canals before SLCRMA's effective date in 1980"). Notwithstanding that "grandfather clause," Plaintiffs advance the chronology-defying theory that Defendants are liable under SLCRMA for oil and gas activities they commenced decades before SLCRMA took effect. Dkt.1-8 at 14. But Plaintiffs' state-court petitions provided no details about that theory; they instead contained "vague citations to Louisiana regulations covering numerous aspects of oil production" without "reveal[ing] to the companies what, specifically, they [allegedly] did wrong." *Plaquemines I*, 7 F.4th at 371; *see* Dkt.1-8.

***Removal to Federal Court and Initial Appeals.*** Years later, Plaquemines Parish finally filled that gap by serving an expert report in a related case, Dkts.1-2, 1-3, 1-4, 1-5, 1-6, 1-7, accompanied by a statement that it represents Plaintiffs' position in all 42 related cases, Dkt.1-6 at 22. The report challenges WWII-era actions by Chevron's predecessors, including The Texas Company, that were integral to supplying the government with refined petroleum products needed for the war. It alleges, more than 70 years after the fact, that these actions went "against industry knowledge and prudent practices," were done in "Bad Faith," and "therefore could not have been lawfully commenced" for SLCRMA purposes. Dkt.1-4 at 8. For example, the report alleges that The Texas Company acted imprudently by "excessive[ly]" dredging canals instead of building "roads with open drainage pathways," Dkt.1-5 at 35; violated Louisiana law by not using steel

tanks and steel-intensive saltwater injection wells, Dkt.1-5 at 35-36; and extracted too much oil too quickly by using vertical drilling rather than directional drilling, Dkt.1-4 at 22-23; Dkt.1-5 at 35.

After receiving the report, Defendants promptly removed this case—and the dozens of other related cases—to federal court under 28 U.S.C. §1442(a), explaining that Plaintiffs' claims "implicate wartime and national emergency activities" that certain Defendants "undert[ook] at the direction of federal officers." Dkt.1 at 2; *see also Northcoast Oil*, 669 F.Supp.3d at 587. Plaintiffs filed motions to remand in all the cases, including this one. Dkts.49, 50. This Court stayed this case (along with the six other related cases assigned to it) while Plaintiffs' remand motions were litigated in two lead district-court cases. *Northcoast Oil*, 669 F.Supp.3d at 587; Dkt.67. The district courts in those lead cases granted remand, but the Fifth Circuit vacated both remand orders. The Fifth Circuit held that "[r]emoval was timely" but did not address the remaining requirements for federal-officer removal; it instead remanded for the district courts to apply its then-recent decision in *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020) (en banc), in the first instance. *Plaquemines I*, 7 F.4th at 375.

On remand, several merits issues were litigated in one of lead district-court cases, including the question "whether defendants 'acted pursuant to a federal officer's directions,'" as §1442(a) requires. *Riverwood*, 2022 WL 101401, at *7. The district court again granted remand after finding insufficient evidence that the relevant defendant there (Humble Oil) was a federal contractor or subcontractor during the war. *Id.* at *7-9. The Fifth Circuit affirmed, but made clear that its holding did not imply that *none* of the 42 related cases could be removed. *See Plaquemines Par. v. Chevron USA, Inc.* (*Plaquemines II*), 2022 WL 9914869, at *2-4 (5th Cir. Oct. 17, 2022)

(per curiam). To the contrary, it expressly observed that "refineries, who *had* federal contracts and acted pursuant to those contracts, *can* likely remove under §1442." *Id.* at *4 (emphasis added).

***This Court's Remand Order***. After *Plaquemines II* was decided, Plaintiffs renewed their request for remand. Dkt.85. Defendants opposed, explaining that this case is not controlled by *Plaquemines II*—and indeed, presents the precise scenario in which *Plaquemines II* recognized that removal *would* be appropriate. Defendants highlighted that "unlike the Defendants in *Plaquemines II*, The Texas Company and Gulf both produced crude oil and then refined that crude to fulfill government contracts for products during WWII needed to support the war effort." Dkt.87 at 3. Put differently, Defendants satisfy the "acting under" requirement here because, during WWII, The Texas Company "produced 100- and 91-octane avgas, among other essential wartime refined petroleum products, to federal-government specifications under their government contracts." Dkt.87 at 9. Defendants further explained that The Texas Company's allegedly unlawful conduct in the Delta Duck Club Field during WWII—specifically, dredging of access canals (instead of building overland roads), use of earthen pits at well heads (rather than steel tanks), use of vertical drilling (instead of directional drilling), lack of saltwater injection wells, and high oil-production rates—is sufficiently "relat[ed] to" an "act under color of [federal] office," 28 U.S.C. §1442(a), because the Texas Company used much of the crude it produced in that field to fulfill its federal avgas contracts. *See* Dkt.87 at 15-21.

For their part, Plaintiffs did not contest that Defendants "acted under" a federal officer pursuant to their federal contracts in their capacity as oil refiners. Instead, Plaintiffs argued that Defendants' refining activity was irrelevant because "[t]his case targets only crude production, not transportation or refining." Dkt.85-2 at 7; *see also* Dkt.91 at 6-8. Thus, according to Defendants,

*Plaquemines II* controlled this case even though Defendants here had the very federal refining contracts that the Fifth Circuit emphasized were lacking in *Plaquemines II*. Dkt.91 at 2-4.

This Court granted Plaintiffs' motion to remand. It concluded that even though Defendants "may have acted under a federal officer when refining oil in Port Arthur, Texas," they "did not act under a federal officer when producing that oil in Louisiana" because, in its view, the relevant refinery contracts "lack[ed] any connection" to the oil production activities at issue in the lawsuit. *Northcoast Oil*, 669 F.Supp.3d at 597. For that same reason—i.e., the lack of connection between oil refining and oil production—this Court held that Defendants also failed to satisfy the "related to" requirement of §1442(a). In sum, this Court held that Defendants "satisf[y] neither the acting under requirement nor the related to requirement for federal officer removal." *Id.* at 596.

***Appeal to the Fifth Circuit.*** Defendants appealed this Court's remand order—along with other courts' remand orders in the related cases—to the Fifth Circuit. The Fifth Circuit designated this appeal as one of two lead cases, stayed the other related appeals, and proceeded with briefing and argument. CA5.Dkt.61-2. On May 29, 2024, the Fifth Circuit issued its opinion in this case.

The panel unanimously rejected this Court's conclusion that Defendants fail to satisfy the "acting under" prong. As the Fifth Circuit explained, *Plaquemines II* does not govern cases (like this one) involving vertically integrated companies; instead, Defendants "satisfy the 'acting under' requirement" for federal-officer jurisdiction by virtue of their WWII-era contracts to supply the federal government with 100-octane avgas. *Plaquemines IV*, 103 F.4th at 335. But a two-judge majority determined that Defendants do not satisfy the "relating to" requirement because, in the majority's view, The Texas Company's challenged WWII-era production activities were "unrelated" to its WWII-era federal refining contracts. *Id.* at 343. Judge Oldham dissented, explaining that "the charged conduct—defendants' petroleum exploration and production

activities—clearly 'related to' an 'act under color of federal office,'" i.e., their "contractually specified refining activities." *Id.* at 348 (Oldham, J. dissenting) (footnote omitted). He also had no difficulty concluding that the defendants had raised "a colorable federal defense," namely, preemption. *Id.* at 356.

Defendants sought rehearing en banc, which the full Fifth Circuit denied by a vote of 7-6. *Plaquemines Par. v. BP Am. Prod. Co.*, 132 F.4th 739, 741 (5th Cir. 2024) (per curiam).

***Proceedings in the U.S. Supreme Court.*** The Supreme Court granted certiorari and, on April 17, 2026, unanimously ruled in favor of Defendants. Plaintiffs "d[id] not dispute" that The Texas Company "acted under a federal officer while engaged in avgas refining," but Louisiana argued that §1442(a) requires a showing that the company "was 'acting under' a federal officer in taking the specific actions challenged in the suit." *Chevron*, 608 U.S. at 15. The Supreme Court rejected this argument, affirming the Fifth Circuit's view that the state's reading "impermissibly conflates the 'distinct' 'acting under' and 'connected or associated with' elements of the federal officer removal test." *Id.* (quoting *Plaquemines IV*, 103 F.4th at 335). As for the "relating to" requirement, the Supreme Court sided with Judge Oldham's dissenting opinion, holding that "Chevron's wartime production of crude oil 'relat[es] to' Chevron's wartime aviation-gasoline refining for the military" and "fits comfortably within the ordinary meaning" of the federal-officer removal statute. *Id.* at 5, 12; *accord id.* at 16 (Jackson, J., concurring in the judgment). The Supreme Court therefore vacated the Fifth Circuit's decision affirming this Court's remand order. *Id.* at 15-16 (majority op.). On remand from the Supreme Court, the Fifth Circuit in turn remanded the case, *sua sponte*, with instructions for this Court to conduct "further proceedings consistent with the Supreme Court's opinion." Dkt.137-1 at 2.

## LEGAL STANDARD

Federal-officer removal is "unlike other removal doctrines: it is not narrow or limited." *City of Walker v. Louisiana ex rel. Dep't of Transp. & Dev.*, 877 F.3d 563, 569 (5th Cir. 2017). On the contrary, 28 U.S.C. §1442(a) must be "liberally construed to give full effect" to the federal interest in ensuring a federal forum for federal officers and those under their direction. *Colorado v. Symes*, 286 U.S. 510, 517 (1932); *accord Humphries v. Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014). The Court must "credit [Defendants'] theory of the case," *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999); accept Defendants' "plausible factual allegations" as true, *Chevron*, 608 U.S. at 12; and give Defendants "the benefit of all reasonable inferences from the facts alleged," *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 945 (7th Cir. 2020).

## ARGUMENT

The Fifth Circuit and Supreme Court have conclusively resolved nearly all requirements for federal-officer removal in Defendants' favor. The Fifth Circuit has already held that Defendants' removal of this case was timely, *Plaquemines I*, 7 F.4th at 368-73, and that Defendants satisfy the first of §1442(a)'s three requirements—the "acting under" requirement, *Plaquemines IV*, 103 F.4th at 335. The Supreme Court took those holdings as a given and went on to definitively resolve §1442's second requirement in Defendants' favor, holding that their "wartime production of crude oil" was sufficiently "relat[ed] to" their "wartime refining of crude oil into avgas for the military." *Chevron*, 608 U.S. at 10. The only remaining question is whether Defendants have raised "a colorable federal defense." *Id.* at 6. They plainly have. Indeed, Defendants have asserted at least two federal defenses that are not only colorable but meritorious: preemption and due process. Unsurprisingly, then, every judge to reach the colorable-federal-defense question has ruled in Defendant's favor. *See Plaquemines IV*, 103 F.4th at 356 (Oldham, J., dissenting); *Riverwood*, 2022 WL 101401, at *6-7; *Alpine*, 2026 WL 2428143, at *10-11.

## I. The Fifth Circuit Has Held That Defendants Timely Removed This Case.

Defendants removed this case—along with the 41 other related cases created by Plaintiffs' decision to artificially carve up their claims into different "operational areas"—in May 2018. *See supra* pp.3-5. Plaintiffs moved to remand, asserting that removal was untimely, but the Fifth Circuit rejected this argument in *Plaquemines I*. As the Fifth Circuit explained, Plaintiffs' state-court petitions contained "vague citations to Louisiana regulations covering numerous aspects of oil production," but failed to identify the "specific conduct that [Plaintiffs] alleged was unlawful." 7 F.4th at 371. Thus, the petitions "did not affirmatively reveal grounds for federal-officer removal" and did not "start[] the removal clock." *Id.* at 371-72. The grounds for removal were first revealed when Plaintiffs served an expert report "unveil[ing] a new legal theory as to how the companies' operations" supposedly violated SLCRMA. *Id.* at 367, 373; *see* Dkt.1-1. And because Defendants removed within 30 days of receiving the report, the Fifth Circuit concluded that the "removal on federal-officer grounds was timely." *Plaquemines I*, 7 F.4th at 373.

As this Court already held, "*Plaquemines I* laid to rest the timeliness issue" in this case, which was removed on the same day, based on the same expert report. *Northcoast Oil*, 669 F.Supp.3d at 588 n.6. Effectively conceding as much, Plaintiffs did not dispute timeliness (nor did they identify any other procedural deficiency in Defendants' notice of removal) in their latest motion for remand in this case, they did not raise it in the Fifth Circuit on appeal, and they did not raise it before the Supreme Court. That precludes them from raising it now. *See United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004) (parties may not raise issues on remand that "were not raised in the district court" prior to the appeal); *United States v. Griffith*, 522 F.3d 607, 610 (5th Cir. 2008) (parties may not raise issues on remand that were "not raised in the appeals court").

## II. The Fifth Circuit Has Held That Defendants "Act[ed] Under" Federal Officers In Fulfilling Government Contracts For Avgas During World War II.

The Fifth Circuit has also resolved the "acting under" requirement in Defendants' favor, specifically rejecting this Court's contrary analysis. *Plaquemines IV*, 103 F.4th at 335. The Fifth Circuit held that Defendants "satisfy the 'acting under' requirement" by virtue of their WWII-era contracts to supply the federal government with 100-octane avgas. *Plaquemines IV*, 103 F.4th at 335; *accord id.* at 345 (Oldham, J., concurring in relevant part). Applying binding circuit precedent, the court explained that "[a] private party 'working under a federal contract to produce an item the government needed' is the 'archetypal case' of a defendant 'acting under' a federal officer." *Id.* at 334 & n.48 (majority op.); *see also Watson v. Philip Morris Cos.*, 551 U.S. 142, 151-52 (2007). During WWII, The Texas Company had just that type of "acting under" relationship: It was a "federal contractor[] that refined a product—100-octane aviation gasoline ('avgas')—that the government needed to fight" (and win) the war. *Plaquemines IV*, 103 F.4th at 335; *see also Plaquemines II*, 2022 WL 9914869, at *2, *4 (noting that acting-under relationships "are often evidenced by governmental contracts" and that "refineries[] who had federal contracts" would likely satisfy the acting-under requirement).

The Fifth Circuit's "acting under" holding is eminently correct. During WWII, The Texas Company operated pursuant to detailed federal contracts under which it produced a specialized war product (100-octane avgas) for the federal government, "the sole wartime purchaser." Dkt.87-1 at 20-21. In those contracts, The Texas Company "agreed to work 'day and night' to quadruple its avgas refining capacity"; it "agreed that the Government could request that it buy avgas components, including crude oil, from other firms"; and, "it agreed that the Government could 'at any time' purchase all of [its] excess avgas." *Chevron*, 608 U.S. at 7-8; *see* Dkt.87-2 at 336-351; Dkt.87-13 at 102-121. In return, the government committed to spending millions of dollars to

finance two separate expansions of The Texas Company's Port Arthur refinery and promised to purchase thousands of barrels of avgas a day from that refinery. *See* Dkt.87-2 at 336, 342; Dkt.87-13 at 102, 110-11. The government further required The Texas Company to refine the avgas "in accordance with the alternative specifications" provided by the contracts, specified the precise make-up of the 100-octane avgas to be refined, and set out detailed delivery and inspection requirements. Dkt.87-2 at 336-37, 343-45, 351; Dkt.87-13 at 103, 112-114, 121. Simply put, in contracting with The Texas Company for the "critical" avgas that the United States needed to win the war, *Chevron*, 608 U.S. at 6, the government "provide[d] excruciating details not only on what the government expects from [the] company—avgas—but also where, when, and how [it] produce[s] the avgas," *Alpine*, 2026 WL 2428143, at *5; *accord Plaquemines IV*, 103 F.4th at 335; Br. for U.S. at 20-23, *Chevron*, 608 U.S. 1 (filed U.S. Sept. 11, 2025).

Although the Supreme Court vacated *Plaquemines IV*, it never questioned the Fifth Circuit panel's unanimous "acting under" holding. Louisiana raised the "acting under" element as an alternative ground for affirmance, but—tellingly—it "d[id] not dispute that Chevron acted under a federal officer while engaged in avgas refining." *Chevron*, 608 U.S. at 15. The state instead argued that Chevron had to show its predecessor was "'acting under' a federal officer in taking the specific actions challenged in the suit." *Id.*; *accord Northcoast Oil*, 669 F.Supp.3d at 597. But the Supreme Court rejected the state's effort to inject a nexus requirement into the "acting under" requirement, expressly *endorsing* the Fifth Circuit panel's contrary analysis of that requirement. 608 U.S. at 15 (citing with approval *Plaquemines IV*, 103 F.4th at 335).

Any effort to relitigate the "acting under" requirement here is also foreclosed by Plaintiffs' concessions on appeal. When specifically asked by Judge Oldham during oral argument in this very case, Plaintiffs' counsel conceded that Defendants "were acting under the direction of a

federal officer because they ha[d] contracts with the Defense Supply Corporation." OA.Tr.23:10-24, https://perma.cc/HLH7-64ZQ; *see also id.* at 23:26-28 (Plaintiffs' counsel: "They were 'acting under' in refining."); *id.* at 24:00-08 ("I admit... they acted under in refining."). Having conceded before the Fifth Circuit that Defendants' avgas-refining contracts establish an "acting under" relationship, Plaintiffs remain bound by that concession for purposes of this remand. *See Griffith*, 522 F.3d at 610.

## III. The Supreme Court Has Held That Defendants' Challenged Production Of Crude Oil During WWII "Relat[es] To" Defendants' Federally Directed Production Of Avgas.

The next requirement for federal-officer removal—that the suit must be "for or relating to any act under color of [a federal] office," 28 U.S.C. §1442(a)—is controlled by the Supreme Court's decision in this case. The *Plaquemines IV* majority's sole basis for affirming this Court's remand order was its conclusion that "the relationship between Defendants' oil production and refinement activities was insufficient to satisfy" the removal statute. *Plaquemines IV*, 103 F.4th at 341. In *Chevron*, however, the Supreme Court unanimously rejected the panel majority's analysis. *See* 608 U.S. at 12; *accord id.* at 16 (Jackson, J., concurring in the judgment). The Court explained that "[t]he phrase 'relating to' sweeps broadly," connoting a "connection" or "association" between two things. *Id.* at 11 (majority op.). And the Court held that "Chevron's case fits comfortably within the ordinary meaning of a suit 'relating to' the performance of federal duties" because there was a "close relationship" between The Texas Company's oil-production activities and "the performance of its federal duties." *Id.* at 7 & n.1, 12. As the Court concluded: "Chevron has therefore satisfied the 'relating to' requirement. This suit implicates acts by Chevron that are closely connected to the performance of its federal duties." *Id.* at 14.

**IV. As Every Federal Judge To Address The Issue Has Concluded, Defendants Also Satisfy The "Colorable Federal Defense" Requirement.**

That leaves only the requirement that Defendants "assert 'a colorable federal defense.'" *Chevron*, 608 U.S. at 6. This requirement "does not come from the text of §1442." *Plaquemines IV*, 103 F.4th at 354 (Oldham, J., dissenting). "Instead, it derives from Article III," *id.*, which gives federal courts jurisdiction over "all Cases … arising under th[e] Constitution" or "the Laws of the United States," U.S. Const. art. III, §2. As the Supreme Court explained in *Mesa v. California*, the federal-officer removal statute "merely serves to overcome the 'well-pleaded complaint' rule" and does not "independently support Art. III 'arising under' jurisdiction." 489 U.S. 121, 136 (1989). A removing defendant is therefore required to assert a federal defense, and the defense needs only to be "colorable," *id.* at 129—i.e., not "wholly insubstantial and frivolous," *Bell v. Hood*, 327 U.S. 678, 682-83 (1946). That is hardly a demanding standard, *see Zeringue v. Crane Co.*, 846 F.3d 785, 789-90 & n.12 (5th Cir. 2017), and Defendants readily satisfy it.

**1.** Defendants' preemption defense is far more than just colorable; it is meritorious. Federal law preempts state law when (1) "compliance with both federal and state regulations is impossible" or (2) "the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Hillman v. Maretta*, 569 U.S. 483, 490 (2013). This case implicates both principles. Plaintiffs allege that some of Defendants' WWII-era oil-production activities in the Garden Island Bay field violated Louisiana law. For example, they claim that Defendants were obligated to build overland roads rather than canals. *See Chevron*, 608 U.S. at 9, 13; Dkt.1 at 13; Dkt.1-2 at 13; Dkt.1-4 at 82-84. But a contemporaneous federal regulation commanded that "no asphalt" be used for the "paving, surfacing or resurfacing" of "any roadway" absent government approval. 7 Fed. Reg. 5142, 5142 (July 7, 1942); *see also* 8 Fed. Reg. 12,571, 12,571 (Sept. 14, 1943) (prohibiting use of road oil for paving). Plaintiffs further contend that Defendants' oil wells

should have used steel tanks rather than earthen pits at well heads and used steel to install saltwater reinjection wells. *See Chevron*, 608 U.S. at 9, 13; Dkt.1 at 12; Dkt.1-2 at 13-14; Dkt.1-4 at 82. But the federal government discouraged the use of steel containers to "the greatest possible degree" during WWII, given the "urgent" "needs of the defense program." 6 Fed. Reg. 5880, 5880 (Nov. 19, 1941). And Plaintiffs take issue with "the 24/7 nature" of Defendants' WWII-era operations, suggesting that Chevron should have adopted "alternative" practices that would have "reduced production rates." Dkt.1 at 12-13; Dkt.1-5 at 125; *see Plaquemines IV*, 103 F.4th at 337. But if Louisiana law required Defendants to slow their extraction of crude, it would have frustrated the federal government's effort to maximize the production of avgas. Accordingly, if Defendants' challenged practices actually "violated Louisiana law," as Plaintiffs suggest, it would have been "impossible to comply with both the federal directives and Louisiana law." *Plaquemines IV*, 103 F.4th at 356 (Oldham, J., dissenting). Defendants have thus raised a (more than) "colorable" argument that "federal law barred them from, while fulfilling their federal contract work, following the state's preferred alternatives." *Alpine*, 2026 WL 2428143, at *11; *accord Plaquemines IV*, 103 F.4th at 356 (Oldham, J., dissenting); *Riverwood*, 2022 WL 101401, at *6.

Defendants also have strong due process defenses. When SLCRMA took effect in 1980, Defendants did not receive fair notice that they needed permits for operations commenced decades earlier. Louisiana officials instead told the oil and gas industry—consistent with the plain text of SLCRMA's "grandfather clause," La. Rev. Stat. §49:214.34(C)(2), and the basic nature of a permitting regime—that permits were required only for *new* operations. The Fifth Circuit has agreed. *See New Orleans City*, 126 F.4th at 1052 (City "ha[d] no claim" against company that "acquired or constructed its pipeline canals before SLCRMA's effective date in 1980"). Moreover, back in the 1940s, Defendants received absolutely no notice that they could incur liability by

dredging canals and using earthen pits, much less that they were required to use directional drilling and install saltwater injection wells. Defendants' production of crude oil during WWII was entirely lawful at the time, and punishing a defendant for conduct that was lawful when it occurred is "a due process violation of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978); *see also FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."). Relatedly, a "presumption against retroactive legislation is deeply rooted" in the Due Process Clause. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). Any way one slices it, the Due Process Clause does not permit Louisiana to punish Defendants' WWII activities under a 1980 permitting statute. As the *Riverwood* court correctly held, Defendants have "a viable due process" defense to Plaintiffs' theory of retroactive liability. 2022 WL 101401, at *7.

**2.** In the prior proceedings before this Court and the Fifth Circuit appeal, Plaintiffs never disputed that Defendants' preemption and due process defenses are (at the very least) colorable. They instead proposed an additional limitation, asserting that the colorable-federal-defense element incorporates a junior-varsity nexus requirement, and can only be met by a federal defense "*arising out of* [the defendant's] *official duties*." Dkt.91 at 9 (formatting altered); *see also* CA5.Dkt.86 at 46-48. That is the same gambit the Supreme Court unanimously rejected when Plaintiffs attempted to smuggle a nexus test into the acting-under element. *See Chevron*, 608 U.S. at 15. The only nexus requirement in the federal-officer-removal statute is the "relating to" requirement that Congress added in 2011, which the Supreme Court found satisfied on the facts of this case while noting the broadening effect of the 2011 amendments. Neither the Supreme Court nor the Fifth Circuit has ever recognized Plaintiffs' proposed additional limitation on the colorable-

federal-defense requirement, and Judge Oldham correctly declined Plaintiffs' invitation to impose it. *See Plaquemines IV*, 103 F.4th at 355-56 (Oldham, J., dissenting). As Judge Oldham explained, the colorable-federal-defense requirement "does not come from the text of §1442"; instead, it is superimposed on the federal-officer-removal statute to ensure that any case removed under that statute will satisfy the minimum requirements of Article III. *Id.* at 354. Nothing in Article III or the federal-officer-removal statute requires that federal defense to arise from an official federal duty—and for good reason, as the risk of local prejudice against federal officers stems from the nature of their activities, not the nature of their federal defenses. A local jury ignoring a federal defense that flows from broader constitutional principles is just as problematic as the same jury ignoring a federal defense that flows from the specifications in a federal contract.

Plaintiffs have previously sought support for their contrary view in *Mesa*, but that case simply requires the "averment of a federal defense"—not one that specifically arises out of the defendant's federal duties. *See* 489 U.S at 135-36. Plaintiffs have suggested that *Mesa* creates a textual link between the colorable-federal-defense requirement and the phrase "under color of such office" in §1442. *See* Dkt.91 at 9. But *Mesa* simply quoted the statutory text that existed at the time, which permitted removal only of suits "for … any act under color of such office." 489 U.S at 124-25. Under that prior language, the relevant federal defense necessarily arose out of the defendant's official duties. But Congress changed that language in 2011, amending the statute to permit removal of any suit "for *or relating to* any act under color of such office." 28 U.S.C. §1442(a)(1) (emphasis added). That amendment expressly "contemplates removal of suits against officers or their agents for acts that were not done under color of their offices, so long as the suits 'relat[e] to' such acts." *Chevron*, 608 U.S. at 15. There is no basis for ignoring that broadening

amendment based on language in pre-amendment cases like *Mesa* that did no more than articulate language in the since-amended statute.

Accepting Plaintiffs' view that any colorable federal defense must "arise out of" an "act[] under color of federal office," Dkt.91 at 9, would effectively nullify Congress' 2011 amendment to §1442(a) by reinstating the causal-nexus requirement as part of the colorable-federal-defense element. Congress' deliberate decision to broaden federal-officer-removal cannot be judicially undone by reintroducing the same causal nexus test back into one of the other elements based on language in pre-amendment cases. That is why the Supreme Court squarely rejected that move when Plaintiffs tried it with the acting-under element while relying on language in a different pre-amendment case (namely *Watson*, 551 U.S. 142). *Compare* La.Br.20-36, *Chevron,* 608 U.S. 1, No. 24-813 (filed U.S. Nov. 13, 2025), *with Chevron*, 608 U.S. at 15. As the Court explained, any such effort would ignore Congress' considered choice to broaden the statute and would violate the canon against superfluity by "leav[ing] the 'relating to' requirement with little, if any, independent function." *Chevron*, 608 U.S. at 15.

Even if there were a nexus requirement lurking in the colorable-federal-defense element, it would be met here. The Supreme Court's central conclusion in *Chevron* was that "Chevron's wartime crude-oil production was closely connected to its wartime avgas refining." *Id.* at 10. To the extent that Defendants' colorable federal preemption defense arises from their crude production, that defense is likewise "closely connected" to their refining activities—which was the conduct performed "under color of federal office." That is precisely why the one Justice who viewed §1442(a) as imposing a causal-nexus requirement concluded that "Chevron satisfies the causal-nexus requirement on the facts presented here." *Id.* at 16 (Jackson, J., concurring). And another district court likewise recently rejected the Parish's argument for the same reason. *See*

*Alpine*, 2026 WL 2428143, at *11. As that decision explains, "Chevron's asserted preemption defense flows from its official acts" because "the avgas contracts … required Chevron to do all it can to produce and proffer avgas to the federal government with utmost urgency and all other priorities coming second." *Id.* Only by disregarding the entire thrust of *Chevron* can Plaintiffs pretend that Defendants' oil production activities are not sufficiently connected to their refining duties performed under federal contract.

* * *

In sum, the only open issue on remand is whether Defendants have asserted a colorable federal defense. This Court should join every other judge to consider the question in concluding that they have. Defendants thus satisfy all requirements for federal-officer removal.

## CONCLUSION

This Court should vacate its April 21, 2023, remand order and direct this case to proceed in federal court.

Dated: October 26, 2026

Respectfully submitted:

*/s/ Alexandra White*
Alexandra White (#29478)
lwhite@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
Eric J. Mayer (#14184)
emayer@susmangodfrey.com
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

-and-

**KEAN MILLER LLP**
Michael R. Phillips (#21020)
Claire E. Juneau (#33209)
909 Poydras Street, Suite 3600
New Orleans, Louisiana 70112
Telephone: (504) 585-3050
Facsimile: (504) 585-3051

-and-

Charles S. McCowan, III (#19699)
Pamela R. Mascari (#25162)
II City Plaza
400 Convention Street, Suite 700
Post Office Box 3513 (70821)
Baton Rouge, Louisiana 70802
Telephone: (225) 387-0999
Facsimile: (225) 388-9133

***Counsel for Chevron U.S.A. Inc., Chevron U.S.A. Holdings Inc., Chevron Pipe Line Co, and The Texas Company***

*/s/ Leigh Ann Schell*
Martin A. Stern (No. 17154)
Leigh Ann Schell, T.A. (No. 19811)
Alexandra R. Lamb (No. 37847)
Luke G. LaHaye, (No. 38809)
**ADAMS AND REESE LLP**
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
(504) 581-3234
martin.stern@arlaw.com
leighann.schell@arlaw.com

alex.lamb@arlaw.com
luke.lahaye@arlaw.com

***Counsel for Anadarko E&P Onshore LLC***

/s/ *Esteban Herrera, Jr.*
Esteban Herrera, Jr. (#20859)
esteban.herrera@keanmiller.com
Richard D. McConnell, Jr. (#29973)
richard.mcconnell@keanmiller.com
Victor J. Suane, Jr. (#31337)
victor.suane@keanmiller.com
**KEAN MILLER LLP**
II City Plaza, Suite 700
400 Convention Street
Post Office Box 3513
Baton Rouge, Louisiana 70821-3513
Telephone: (225) 387-0999
Facsimile: (225) 388-9133

***Counsel for Devon Energy Production Company, L.P.***

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2026 a copy of the above and foregoing was electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

*/s/ Alexandra White*
Alexandra White